**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSSETTS**

| | |
|---|---|
| Mozart Saint Cyr, individually and on behalf of all others similarly situated, <br><br>               Plaintiff, <br><br>    v. <br><br> JPMorgan Chase & Co., <br><br>               Defendant. | Civil Action No.: 1:25-cv-11751-BEM <br><br> **FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Mozart Saint Cyr ("Plaintiff"), by and through his attorneys, makes the following allegations pursuant to the investigation of his counsel and based upon information and belief, except as to allegations specifically pertaining to himself and his counsel, which are based on personal knowledge, against Defendant JPMorgan Chase & Co. ("Defendant" or "JPMC").

**NATURE OF THE ACTION**

1.      Mass. Gen. Laws ch. 149, § 19B(2)(b) requires all applications for employment within the Commonwealth to contain a notice of job applicants' and employees' rights concerning lie detector tests.

2.      Despite this abundantly clear mandate, until recently,[1] Defendant did not provide such written notice of rights in its Massachusetts job applications.

3.      Making matters worse, Defendant requests that job applicants take and indeed subjects job applicants to a lie detector test – a "HireVue Interview"[2] conducted and analyzed by another company, HireVue, Inc. ("HireVue"). *See* Mass. Gen. Laws ch. 149, § 19B(2).

---

[1] On information and belief, not until approximately April 2025.

[2] *See, e.g.*, https://careers.jpmorgan.com/us/en/how-we-hire/prepare-for-an-interview ("We'll invite you to participate in a video interview, powered by HireVue."); chase.hirevue.com; jpmorgan.hirevue.com.

4.      A HireVue Interview constitutes a lie detector test, under the statute, because it is a test utilizing a device, mechanism, instrument or written examination, which is operated, or the results of which are used or interpreted by an examiner for the purpose of purporting to assist in or enable the detection of deception, the verification of truthfulness, or the rendering of a diagnostic opinion regarding the honesty of an individual.  Mass. Gen. Laws ch. 149, § 19B(1).

5.      Under Mass. Gen. Laws ch. 149, § 19B(4), persons aggrieved by a violation of Mass. Gen. Laws ch. 149, § 19B(2) have a private right of action for such violations, for injunctive relief and damages, including minimum statutory damages of $500 per violation.

6.      Mass. Gen. Laws ch. 149, § 19B(4) also expressly authorizes class actions, providing that a civil action may be brought by a person "in his own name and on his own behalf, or for himself and, for other [sic] similarly situated."

7.      Thus, pursuant to Mass. Gen. Laws ch. 149, § 19B(4), Plaintiff brings this action, on behalf of himself and those similarly situated, to redress Defendant's violations of Mass. Gen. Laws ch. 149, § 19B(2) and (2)(b).

## PARTIES

8.      Plaintiff Mozart Saint Cyr is a citizen of Massachusetts who resides in Bridgewater, Massachusetts.  In or around September 2023, while located in Massachusetts, Plaintiff applied to work in Defendant's "2024 Corporate & Investment Bank Risk Management Summer Analyst Program."  In or around December 2024, while located in Massachusetts, Plaintiff applied to work at Defendant's Newton, Massachusetts location as a Relationship Banker (job ID 210582147). However, in his JPMC job applications, Plaintiff was not provided the notice of his rights concerning lie detector tests that is required by Mass. Gen. Laws ch. 149, § 19B(2)(b).  While Plaintiff was located in Massachusetts, Defendant also requested that Plaintiff take and indeed subjected Plaintiff to a lie detector test as part of the job application process – a HireVue Interview.

Plaintiff was unaware, at the time, that the HireVue Interview was a lie detector test.  Had Plaintiff been made aware by Defendant that the HireVue Interview was a lie detector test, he would not have completed the HireVue Interview.  Moreover, Defendant knew or should have known that Plaintiff was applying for JPMC employment from Massachusetts, given that Defendant collected Plaintiff's Massachusetts address during the job application process.  *See, e.g.*, Ex. 1 at 37-38, Ex. 2 at 37-38.

9.      Defendant JPMorgan Chase & Co. is a Delaware corporation with its principal place of business at 383 Madison Avenue, New York, NY 10017.  Defendant operates throughout and employs a significant number of residents in Massachusetts.  Defendant targets its job applications at prospective employees whom it knows to reside in Massachusetts.

**JURISDICTION AND VENUE**

10.      Jurisdiction is proper in this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2) because this is a class action in which at least one member of the class is a citizen of a state different from any Defendant, the amount in controversy exceeds $5 million, exclusive of interest and costs, and the proposed classes contain more than 100 members.

11.      This court has personal jurisdiction over Defendant because a substantial portion of the events giving rise to this cause of action occurred here.  Plaintiff is domiciled and suffered his primary injury in this district.

12.      Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

**FACTUAL ALLEGATIONS**

13.     On December 16, 1985,[3] Massachusetts enacted 1985 Mass. Acts Chapter 587,[4]

introduced as HB 6908[5] and codified at Mass. Gen. Laws ch. 149, § 19B.

14.     Mass. Gen. Laws ch. 149, § 19B(2)(b) provides:

> All applications for employment within the commonwealth shall contain the following notice which shall be in clearly legible print:
>
> "It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability."

15.     In plain violation of the law, until recently, Defendant did not provide such

written notice of rights in its applications for JPMC Massachusetts-based jobs.

16.      Indeed, until recently, searches for the terms "lie detector" on Defendant's

websites listing job openings, information, and applications[6] – jpmorganchase.com/careers

(Careers at JPMorgan Chase), careers.jpmorgan.com/US/en/chase (Careers at Chase),

jpmc.fa.oraclecloud.com/hcmUI/CandidateExperience/en/sites/CX_1001 (JPMorgan Chase job

board), and jpmc.fa.oraclecloud.com/hcmUI/CandidateExperience/en/sites/CX_1002 (Chase job

board) – yielded no results.

17.     Plaintiff's counsel surveyed numerous job applications that Defendant has made

publicly available via the *supra* websites.  Until recently, **none** of Defendant's job applications

---

[3] *See, e.g.*, 1985 Journal of the House of Representatives of the Commonwealth of Massachusetts (https://archives.lib.state.ma.us/handle/2452/796446); 1985 Bill History at p. 3388 (https://archives.lib.state.ma.us/bitstream/handle/2452/796446/1985-House-03-BillHistory.pdf ?sequence=15&isAllowed=y).

[4] https://archives.lib.state.ma.us/handle/2452/40042.

[5] http://archives.lib.state.ma.us/handle/2452/602897.

[6] All of which specify that they are operated by Defendant, stating "JPMorgan Chase & Co. All rights reserved. JPMorgan Chase [& Co.] is an Equal Opportunity Employer, including Disability/Veterans."

viewed by Plaintiff's counsel complied with Mass. Gen. Laws ch. 149, § 19B(2)(b). *See* Ex. 1-2.[7]

18.    Plaintiff and Class members were aggrieved because they were bona-fide applicants for jobs with Defendant, and Defendant deprived them of their statutorily guaranteed right to the notice provided for by Mass. Gen. Laws ch. 149, § 19B(2)(b).

19.    Plaintiff and Sub-Class members were also aggrieved because Defendant requested that they take and indeed subjected them to a lie detector test – a HireVue Interview. Mass. Gen. Laws ch. 149, § 19B(1).  HireVue, itself, confirms that video interviewing holds the potential to "provide the ability to scale your lie detection, screen out embellishers, and hone in on those who are actually a fit for the role."[8]

20.    HireVue Interviews are an artificial intelligence-powered job candidate screening tool, provided by HireVue, Inc., and used by much of the Fortune 500 in pre-recorded (one-way) video and/or live video interview sessions.[9]  HireVue Interviews work by having job candidates answer a set of interview questions online while being video recorded.

21.    Before posing such questions, Defendant issues instructions to job applicants and seeks their certification:[10]

-    Failure to supply accurate and complete data can delay your recruiting process. You will be required to certify that information you have provided is **truthful** prior to submitting your form.

-    I hereby certify that all statements in this application form are **true and correct** to the best of my knowledge. I acknowledge and understand that JPMorgan Chase may deem any knowing **misstatement and/or misrepresentation as dishonesty** and serious misconduct, and is a just ground for the discontinuation of my job application,

---

[7] Ex. 1 pertains to Job ID 210616233 (formerly available at https://jpmc.fa.oraclecloud.com/hcmUI/Candidate Experience/en/sites/CX_1001/job/210616233).  Ex. 2 also pertains to Job ID 210616233 (formerly available at https://jpmc.fa.oraclecloud.com/hcmUI/CandidateExperience/en/sites/CX_1002/job/210616233).

[8] https://www.hirevue.com/blog/hiring/feedback-the-building-block-of-a-great-candidate-experience.

[9] *See* https://www.law.georgetown.edu/georgetown-law-journal/wp-content/uploads/sites/26/2021/06/Hinkle-The_Modern_Law_Detector.pdf.

[10] *See* Ex. 3 at 1, 6 (emphasis added).  Ex. 3 shows certain notices included in the application for Job ID 210647988 (available at https://jpmc.fa.oraclecloud.com/hcmUI/CandidateExperience/en/sites/CX_1002/job/210647988).

rescinding of any job offer extended, or for the termination of my employment with the Company.

22.    Questions that candidates can be asked during a HireVue Interview include things like:[11]

- Tell me about a time that you acted with integrity.

- What does integrity mean to you?

- What would you do if you saw someone cheating on a test?

- A student group president posts exam answers for all students in the group. How would you respond?

- You discovered that your coworker has been falsifying information in their reports to make them look more productive. Would you report this, even though it could hurt your relationship with them? What factors would you consider? How do ethics and integrity impact what you would report?

- Have You Ever Acted with Integrity?

23.    Over the years, HireVue Interviews have then evaluated job candidates using up to three different types of interview data:

- Language input;

- Speech input; and

- Video input.

24.    "Language input" refers to the content of job candidates' spoken responses (i.e., what is said by job candidates). That is, HireVue Interviews work by "(1) transcribing spoken words to text, (2) understanding the meaning of the text, and (3) assessing/ scoring the candidate's answers[.]"[12]

---

[11] *See, e.g.*, https://econ.duke.edu/sites/econ.duke.edu/files/file-attachments/Typical%20 Questions%20from%20HireVue%20Interviews.pdf; https://www.wallstreetoasis.com/resources/ interviews/hirevue-interview-guide; https://www.projectpractical.com/hirevue-interview-questions-and-answers/.

[12] https://webapi.hirevue.com/wp-content/uploads/2024/09/HV_2024_AI-Explainability-Statement.pdf, at p. 6.

25.    Taking these one by one, HireVue Interviews first "convert the candidate's speech to written text, using a third-party speech-to-text transcription system developed by a company called Rev.ai. This technology recognises the sound of words[,] … [using m]achine learning[,] … a form of data processing that identifies statistical patterns from data sets."[13]

26.    Next, "based on the transcribed text, [HireVue Interviews] use a form of AI called 'natural language processing' (NLP) in order to understand candidates' answers[.]"[14]  In other words, HireVue Interviews "differentiat[e] between the usage of the same word in different contexts. … For example, [how] the word 'bank' [can be] used in two different senses in this sentence: 'Joanne went to the river bank today, and she visited the bank to withdraw cash on the way home.'"[15]  HireVue claims that its "system is especially effective at understanding the meaning contained in response to a question, regardless of the specific vocabulary used. This ability to generalize makes it more difficult for candidates to 'game' the video interview process[.]"[16]

27.    Afterward, the results of HireVue's natural language processing are "fed into a 'multipenalty optimized model' (a machine learning system). The multipenalty optimized model has been trained to score [] responses against the relevant competenc[ies]."[17]  HireVue uses a rating scale "for each competency[, with] … five rating levels, from 'novice' to 'expert'."[18]

---

[13] *Id.*

[14] *Id.*

[15] *Id.* at 7.

[16] *Id.*

[17] *Id.*

[18] *Id.* at 8.

28.     "Speech input" refers to a "candidate's voice intonation, speech inflection,"[19] and other "verbal … cues such as … tempo, pitch, and pauses which might indicate nervousness, confidence, or thoughtfulness."[20]  To help tailor responses for the analysis of such audio features, candidates have been given various pieces of guidance.  For example, "[n]o pauses: Make sure you speak in a clear, concise manner with minimal pauses. Using words such as 'like', 'and', 'umm' are common but will reduce your score. Be careful not to use fillers, think before you speak, and keep a steady pace."[21]  And "[v]oice modulation: When answering, be sure to emphasize important words and take pauses when needed. Speaking in a single tone feels like reciting a script, so imagine you are in a real interview and speak naturally."[22]

29.     "Video input" refers to a candidate's facial expressions, body language, and/or video background and surroundings.  Traditionally, HireVue uploaded candidates' respective interview videos to the application programming interface ("API") of Affectiva, an artificial intelligence company that works to understand human emotions, cognitive states, and activities by analyzing facial expressions.

30.     Affectiva "use[s] something called the Facial Action Coding System (FACS), developed by Paul Ekman, to label facial expressions. There are 24 core facial actions that occur independently on a human face[]"[23] which FACS may track.  FACS and/or similar systems have

---

[19] https://www.law.georgetown.edu/georgetown-law-journal/wp-content/uploads/sites/26/2021/06/Hinkle-The_Modern_Law_Detector.pdf, at p. 1213.

[20] https://web.archive.org/web/20250728052514/https://www.paradigmpress.org/ist/article/download/1204/1065/1376, at p. 111.

[21] https://careerhub.students.duke.edu/blog/2022/01/11/how-to-succeed-in-a-hirevue-video-interview/.

[22] *Id.*

[23] https://blog.affectiva.com/the-emotion-behind-facial-expressions.

been utilized, both in academic studies and in practice, for the purpose of facilitating deception

detection.[24]

31.    HireVue has utilized Affectiva technology[25] to track qualities and/or expressions

such as anger, fear, sadness, attention, joy, valence ("a measure of the positive or negative nature

of the recorded person's experience"[26]), smiles, surprise, contempt, disgust, and smirks.

32.    With language, speech, video, and/or other inputs, HireVue has built "a database

of deep, rich psychographic information on millions of people,"[27] purportedly evaluates a job

applicant's personality traits, and ultimately draws conclusions regarding a job applicant's

degree of cultural fit with companies.  HireVue conveys these findings to employers by

"assign[ing] each applicant a numerical 'employability' score[]"[28] or "competency-level scoring

report[.]"[29]

33.    Such scores can be tailored to meet employers' highly individualized needs;

HireVue employability scores' "precise criteria are often developed in consultation with the

employer to establish 'future top performer' qualities and behaviors. But in determining a

candidate's employability score, the algorithm will typically evaluate cognitive ability, emotional

---

[24] *See, e.g.*, https://arxiv.org/ftp/arxiv/papers/2105/2105.13659.pdf; https://legaltechnology.com/2017/04/06/jury-lab-partners-with-affectiva-emotion-ai/ ("Susan Constantine, MPsy, author and founder of Silent Messages LLC, is announcing the launch of her new business, Jury Lab, LLC. The new company has partnered with Wild Blue Technology and Affectiva Emotion AI, a company that brings artificial intelligence to life with emotion recognition technology. Jury Lab is a patent-pending emotion response software service that provides the legal community break-through technology to enhance the proven sciences of emotion recognition, body language reading, and deception detection.").

[25] *See, e.g.*, https://www.slideshare.net/ignaciophoenix/tim-peacock-emotion-ai-developer-day-2016, slides 18-19; https://www.fastcompany.com/3064863/watch-this-ai-platform-assess-trumps-and-clintons-emotional-intelligence.

[26] https://www.degruyter.com/document/doi/10.1515/pjbr-2020-0030/html?lang=en.

[27] https://www.law.georgetown.edu/georgetown-law-journal/wp-content/uploads/sites/26/2021/06/Hinkle-The_Modern_Law_Detector.pdf, at p. 1214.

[28] *Id.*

[29] https://www.hirevue.com/blog/hiring/hirevue-hiring-intelligence.

intelligence, and personality traits, including core competencies such as 'willingness to learn,'

'conscientiousness & responsibility,' and 'personal stability.'"[30]

34.    On its website, HireVue describes an employee demonstrating

"Conscientiousness & Responsibility: Is responsible, reliable, and committed to achieving and

maintaining high work standards. Has an **innate sense of integrity and honor**. Can self-monitor

and manage their own follow-up."[31]  (emphasis added).

35.    A HireVue patent, No. 10528916, titled "Competency-based question selection

for digital evaluation platforms," sheds further light upon the company's competency-level

scoring.  Specifically, the patent describes "methods and systems for interview competency and

question validation and analysis" utilizing a "digital evaluation platform" [32] that can be "used by

a candidate (or interviewee) during a digital interview."[33]  Per the patent, "[t]he digital evaluation

platform can organize the digital interview using competency data corresponding to the interview

as well as questions data" and "some of the potential competencies may include drive,

dedication, creativity, motivation, communication skills, teamwork, energy, enthusiasm,

determination, **reliability, honesty, integrity**, intelligence, pride, dedication, analytical skills,

listening skills, achievement profile, efficiency, economy, procedural awareness, opinion,

emotional intelligence, etc."[34]  (emphasis added).

36.    Given the foregoing, HireVue Interviews are lie detector tests.  Their purpose is

clear: they are a "test utilizing … any other device, mechanism, instrument or written

examination, which is operated, or the results of which are used or interpreted by an examiner for

---

[30] https://www.law.georgetown.edu/georgetown-law-journal/wp-content/uploads/sites/26/2021/06/Hinkle-The_Modern_Law_Detector.pdf, at p. 1214.

[31] https://www.hirevue.com/blog/hiring/6-ways-to-use-the-hiring-process-to-overcome-contact-center-attrition.

[32] https://image-ppubs.uspto.gov/dirsearch-public/print/downloadPdf/10528916, at p. 1.

[33] *Id.* at 26.

[34] *Id.*

the purpose of or purporting to assist in or enable the detection of deception, the verification of

truthfulness, or the rendering of a diagnostic opinion regarding the honesty of an individual."

*See* Mass. Gen. Laws ch. 149, § 19B(1).

## CLASS REPRESENTATION ALLEGATIONS

37.  Plaintiff seeks to represent a class defined as

> All persons who applied for a Massachusetts-based position of employment with
> Defendant (the "Class").

38.  Plaintiff seeks to represent a sub-class defined as:

> All Massachusetts citizens who applied for a position of employment with
> Defendant and completed a JPMC HireVue Interview while located in
> Massachusetts (the "Sub-Class"; collectively, with the Class, the
> "Classes").

39.  Members of the Classes are so numerous that their individual joinder herein is

impracticable.  On information and belief, members of the Classes number in the thousands.  The

precise number of the Classes' members and their identities are unknown to Plaintiff at this time

but may be determined through discovery.  The Classes' members may be notified of the

pendency of this action by mail and/or publication through the distribution records of Defendant.

40.  Common questions of law and fact exist as to all the Classes' members and

predominate over questions affecting only individual members of the Classes.  Common legal

and factual questions include, but are not limited to, whether Defendant's conduct as alleged

herein violates Massachusetts law, including the provisions of Mass. Gen. Laws ch. 149,

§ 19B(2) and (2)(b); whether Plaintiff and the Classes' members are entitled to damages and if

so, in what amount; and whether Plaintiff and the other members of the Classes are entitled to

equitable relief, including but not limited to injunctive or declaratory relief.

41.  The claims of the named Plaintiff are typical of the claims of the Classes in that

the named Plaintiff is a Massachusetts citizen who applied for employment with Defendant.  In

his applications for employment with Defendant, Plaintiff – like the rest of the Class – was not

furnished the notice of rights that is required by Mass. Gen. Laws ch. 149, § 19B(2)(b).  And like

the rest of the Sub-Class, Defendant also requested that Plaintiff take, and indeed subjected

Plaintiff, to a lie detector test – a HireVue Interview – as part of Plaintiff's job application.

42.     Plaintiff is an adequate representative of the Classes because his interests do not

conflict with the interests of the Classes' members he seeks to represent, he has retained

competent counsel experienced in prosecuting class actions, and he intends to prosecute this

action vigorously.  The interests of Classes' members will be fairly and adequately protected by

Plaintiff and his counsel.

43.     The class mechanism is superior to other available means for the fair and efficient

adjudication of the claims of the Classes' members.  Each individual member of the Classes may

lack the resources to undergo the burden and expense of individual prosecution of the complex

and extensive litigation necessary to establish Defendant's liability.  Individualized litigation

increases the delay and expense to all parties and multiplies the burden on the judicial system

presented by the complex legal and factual issues of this case.  Individualized litigation also

presents a potential for inconsistent or contradictory judgments.  In contrast, the class action

device presents far fewer management difficulties and provides the benefits of single

adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and

claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I
### Declaratory and Injunctive Relief

44.     Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

45.     Plaintiff brings this Count individually and on behalf of the members of the

Classes.

46.     Absent injunctive relief, Defendant may continue to violate the law and infringe

upon the rights of Massachusetts job applicants.

47.     Plaintiff asks this court to declare Defendant's conduct unlawful and enjoin

Defendant from using and disseminating application materials in violation of Massachusetts law.

## COUNT II
### Violation of Mass. Gen. Laws ch. 149, § 19B(2)

48.      Plaintiff incorporates by reference and re-alleges each and every allegation set

forth above as though fully set forth herein.

49.     Plaintiff brings this Count individually and on behalf of the members of the

Sub-Class.

50.     Mass. Gen. Laws ch. 149, § 19B(1) defines a lie detector test as:

> [A]ny test utilizing a polygraph or any other device, mechanism,
> instrument or written examination, which is operated, or the results of
> which are used or interpreted by an examiner for the purpose of purporting
> to assist in or enable the detection of deception, the verification of
> truthfulness, or the rendering of a diagnostic opinion regarding the honesty
> of an individual.

51.     Mass. Gen. Laws ch. 149, § 19B(2) states:

> It shall be unlawful for any employer or his agent, with respect to any of
> his employees, or any person applying to him for employment, including
> any person applying for employment as a police officer, to subject such
> person to, or request such person to take a lie detector test within or
> without the commonwealth, or to discharge, not hire, demote or otherwise
> discriminate against such person for the assertion of rights arising
> hereunder. This section shall not apply to lie detector tests administered by
> law enforcement agencies as may be otherwise permitted in criminal
> investigations.

52.     Defendant is an employer, and Plaintiff and Sub-Class members are persons who

applied to Defendant for employment.

13

53.     Defendant requested that Plaintiff and Sub-Class members take, and indeed subjected Plaintiff and Sub-Class members to, a lie detector test – a HireVue Interview.

54.     A HireVue Interview constitutes a lie detector test, under the statute, because it is a test utilizing a device, mechanism, instrument or written examination, which is operated, or the results of which are used or interpreted by an examiner for the purpose of purporting to assist in or enable the detection of deception, the verification of truthfulness, or the rendering of a diagnostic opinion regarding the honesty of an individual.  Mass. Gen. Laws ch. 149, § 19B(1).

55.     Pursuant to Mass. Gen. Laws ch. 149, § 19B(4), Plaintiff and Sub-Class members seek statutory damages of not less than five hundred dollars per violation and reasonable attorney's fees and costs as a result of Defendant's violations of Mass. Gen. Laws ch. 149, 19B(2).

## COUNT III
### Violation of Mass. Gen. Laws ch. 149, § 19B(2)(b)

56.     Plaintiff incorporates by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

57.     Massachusetts law explicitly requires that companies soliciting applications for employment include the following language on all Massachusetts job applications: "It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability."  Mass. Gen. Laws ch. 149, § 19B(2)(b).

58.     Until recently, Defendant did not include this statutorily-required language in its Massachusetts job applications, including the job applications filled out by Plaintiff and Class members.

59.     Pursuant to Mass. Gen. Laws ch. 149, § 19B(4), Plaintiff and Class members seek statutory damages of not less than five hundred dollars per violation and reasonable attorney's fees and costs as a result of Defendant's violations of Mass. Gen. Laws ch. 149, 19B(2)(b).

## RELIEF DEMANDED

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

a.     For an order certifying the Classes, naming Plaintiff as representative of the Classes, and naming Plaintiff's attorneys as Class Counsel to represent the Classes;

b.     For an order declaring that Defendant's conduct violates the statute referenced herein;

c.     For an order finding in favor of Plaintiff and the Classes, on all counts asserted herein;

d.     For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

e.     For prejudgment interest on all amounts awarded;

f.     For an order of restitution and all other forms of equitable monetary relief;

g.     For an order enjoining Defendant from continuing the illegal practices detailed herein and compelling Defendant to undertake a corrective advertising campaign; and

h.     For an order awarding Plaintiff and the Classes their reasonable attorneys' fees and expenses and costs of suit.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury on all claims so triable.

Dated: July 28, 2025                    Respectfully submitted,

                                        **BIRNBAUM & GODKIN, LLP**

                                        By: */s/ David S. Godkin*
                                             David S. Godkin

David S. Godkin (BBO#196530)
James E. Kruzer (BBO#670827)
1 Marina Park Drive, Suite 1410
Boston, MA 02210
Telephone: (617) 307-6100
Email:  godkin@birnbaumgodkin.com
         kruzer@birnbaumgodkin.com

**BURSOR & FISHER, P.A.**
Joseph I. Marchese*
Matthew A. Girardi*
Julian C. Diamond*
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
Telephone: (646) 837-7150
Facsimile: (212) 989-9163
Email: jmarchese@bursor.com
        mgirardi@bursor.com
        jdiamond@bursor.com

*Attorneys for Plaintiff*

***Pro Hac Vice*

16