UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| **MOZART SAINT CYR**, *individually and on behalf of all others similarly situated*, <br><br> Plaintiff, <br><br> v. <br><br> **JPMORGAN CHASE BANK, N.A.**, *pled as JPMorgan Chase & Co.*, <br><br> Defendant. | Civil Action No. <br> 25-11751-BEM |

### MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO DISMISS

**MURPHY, J.**

Plaintiff Mozart Saint Cyr alleges that Defendant JPMorgan Chase Bank, N.A. ("JPMorgan") subjected him to an unlawful lie detector test as part of a job application and failed to provide a written notice of his rights regarding such tests, in violation of Mass. Gen. Laws ch. 149, § 19B (the "Lie Detector Statute"). Plaintiff brings these claims on behalf of himself and on behalf of all others similarly situated. JPMorgan has moved to dismiss. For the reasons stated herein, the Court finds Plaintiff's allegations insufficient as to the purported lie detector test and finds that the Court lacks jurisdiction over his notice claim. Accordingly, the Court will grant JPMorgan's motion in part, deny the motion in part, and remand the notice claim.

### I.      Background

####     A.      Factual Background

The Court draws the following facts from the Amended Complaint, Dkt. 17 ("Compl."), and accepts them as true for purposes of the instant motion.

Plaintiff applied to work at JPMorgan in or around September 2023 and again in or around December 2024. *Id.* ¶ 8. Neither application included the following notice:

> It is unlawful in Massachusetts to require or administer a lie detector test as a condition of employment or continued employment. An employer who violates this law shall be subject to criminal penalties and civil liability.

*Id.* ¶¶ 1–2, 8; *see also* Mass. Gen. Laws ch. 149, § 19B(2)(b) ("All applications for employment within the commonwealth shall contain the following notice which shall be in clearly legible print."). Also, as part of one or both applications, JPMorgan requested that Plaintiff take a HireVue Interview, which Plaintiff completed. Compl. ¶¶ 3, 8.

HireVue Interviews are an artificial-intelligence-powered job candidate screening tool, provided by HireVue, Inc ("HireVue"). *Id.* ¶ 20. HireVue Interviews work by having job candidates answer a set of interview questions online while being recorded. *Id.*[1] Applicants may be asked questions related to honesty or integrity (*e.g.*, "Tell me about a time that you acted with integrity."). *Id.* ¶ 22. HireVue analyzes interviews using three types of data: language input, speech input, and video input. *Id.* ¶ 23. "Language input" refers to the content of job candidates' spoken responses, which are transcribed and assessed using artificial intelligence against "relevant competencies." *Id.* ¶¶ 24–27 (brackets omitted). "Speech input" and "video input" refer to a candidate's tone, expression, and other verbal-visual cues, which are analyzed using third-party, artificial-intelligence technology and converted into an "employability score" or "competency-level scoring report" by HireVue. *Id.* ¶¶ 28–32 (brackets and quotation marks omitted). "Such scores can be tailored to meet employers' highly individualized needs." *Id.* ¶ 33.

---

[1] Plaintiff states that, "[b]efore posing such questions, Defendant issues instructions to job applicants"—"'to supply accurate and complete data'"—and "seeks [applicants'] certification"—"'that all statements in [their] application form[s] are **true and correct** to the best of [their] knowledge.'" Compl. ¶ 21 (quoting Dkt. 17-3 at 2, 7 (emphasis in Amended Complaint)). The quoted exhibit is a JPMorgan job application form that does not reference HireVue Interviews. *See generally* Dkt. 17-3.

However, the HireVue algorithm typically evaluates cognitive ability, emotional intelligence, and personality traits, which may include whether the applicant has an "innate sense of integrity and honor." *Id.* ¶¶ 33–34.

### B. Procedural Background

On April 28, 2025, Plaintiff filed this lawsuit against JPMorgan in the Suffolk County Superior Court for the Commonwealth of Massachusetts. Dkt. 14 at 3–10. On June 16, 2025, JPMorgan removed to this Court pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), asserting minimal diversity and an amount in controversy exceeding $5 million. *See generally* Dkt. 1. On July 17, 2025, upon an earlier motion to dismiss, later denied as moot, Plaintiff amended his complaint. Dkts. 12–13, 17–18.

In his Amended Complaint, Plaintiff alleges three claims on behalf of himself and on behalf of a putative class or sub-class of job applicants: (1) for declaratory and injunctive relief, Compl. ¶¶ 44–47; (2) for violation of Mass. Gen. Laws ch. 149, § 19B(2), Compl. ¶¶ 48–55 (the "Lie Detector Claim"); and (3) for violation of Mass. Gen. Laws ch. 149, § 19B(2)(b), Compl. ¶¶ 56–59 (the "Notice Claim").

On August 25, 2025, JPMorgan filed the instant motion to dismiss under Federal Rule 12(b)(6). Dkt. 21; *see also* Dkt. 22 ("Memo."). On September 8, 2025, Plaintiff opposed. Dkt. 23 ("Opp."). With leave, JPMorgan filed a reply on September 22, 2025. Dkt. 28 ("Reply").

## II. Legal Standard

Courts analyzing claims under Federal Rule 12(b)(6) must determine whether a plaintiff's factual allegations—disregarding all "conclusory" statements—"state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The inquiry is usually limited to the facts alleged in the complaint, incorporated into the complaint, or susceptible to judicial notice," *Whelden v. U.S. Bank Nat'l Ass'n*, 494 F. Supp. 3d 68, 73 (D. Mass. 2020) (citing *In re*

3

*Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)), "but the court may also consider other documents the authenticity of which is not disputed by the parties, documents central to the plaintiff's claim, and documents sufficiently referred to in the complaint," *id.* (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)).

**III.   Discussion**

    **A.   The Lie Detector Claim**

"The Lie Detector Statute prohibits employers in Massachusetts from subjecting employees or applicants to lie detector tests as a condition of employment or continued employment." *Baker v. CVS Health Corp.*, 717 F. Supp. 3d 188, 190 (D. Mass. 2024).[2] The statute defines a "lie detector test" as:

> [A]ny test utilizing a polygraph or any other device, mechanism, instrument or written examination, which is operated, or the results of which are used or interpreted by an examiner for the purpose of purporting to assist in or enable the detection of deception, the verification of truthfulness, or the rendering of a diagnostic opinion regarding the honesty of an individual.

Mass. Gen. Laws ch. 149, § 19B(1).  Thus, the statute creates two classes of lie detector tests: a polygraph constitutes a lie detector test *ipso facto*; alternatively, "any other device, mechanism,

---

[2] In *Baker*, the defendants "[did] not challenge the sufficiency of the claims that [the defendants had] violated the Lie Detector Statute" by subjecting their applicants to HireVue Interviews.  717 F. Supp. 3d at 189–90.  Accordingly, the Court did not have occasion to consider whether the HireVue Interviews, as used by those defendants, constituted lie detector tests under section 19B.

instrument or written examination" can qualify as a *de facto* lie detector test if it used "for the purpose of" lie detection. *Id.*[3]

Plaintiff alleges that JPMorgan subjected him to a (*de facto*) lie detector test by requiring him to take a HireVue Interview as part of his job application. Compl. ¶¶ 48–55. However, the Amended Complaint contains insufficient allegations to support the inference that his interview was used for the purpose of truth assessment. Plaintiff's allegations do no more than establish that HireVue Interviews *could* constitute lie detector tests when used for that purpose. However, this is not enough. Any "device, mechanism, instrument or written examination" *could* qualify as a lie detector test if used for that purpose. To wit, if an employer were to give his applicant an IQ test on the belief that people with certain IQs are inherently deceitful, wanting to find that out, that would likely violate the Lie Detector Statute, notwithstanding the apparent silliness of that usage. Thus, that HireVue holds its product out as having any capability with respect to truth detection

---

[3] *See also Auguste v. G4S Secure Sols. (USA), Inc.*, No. SUCV14-3311-BLS1 (Mass. Sup. Ct. Apr. 25, 2016) (slip op.) (attached to JPMorgan's Memo. at Dkt. 22-1). *Auguste* considered, at summary judgment, an employer's use of the Minnesota Multiphasic Personality Inventory-2 (the "MMPI-2"). *Id.* at *1. As explained in the opinion, the MMPI-2 can indicate certain mental illnesses, including some that are correlated with dishonesty. *Id.* at *3–4, 9–10. The MMPI-2 further relies on "validity scales," including the "L" ("Lie") scale, which can indicate a "non-credible pattern of responses" resulting from "intentional deception" or from other causes, such as a "high need to see oneself as extremely virtuous." *Id.* at *4–5, 10. The *Auguste* court found that the MMPI-2's diagnostic function did not render it a lie detector test under section 19B because it merely indicated mental illness correlated with dishonesty, rather than dishonesty itself. *Id.* at *9–10. The court likewise found that the MMPI-2's "L" scale did not turn the MMPI-2 into a lie detector test because that scale measured incredibility beyond just "intentional deception" and because the scale's "purpose" was "to *validate* the test results," rather than to "detect[] . . . lies." *Id.* at *10–12 (emphasis in original). Further, the Court highlighted the statute's "requirement that the test be employed for the 'purpose' of determining deception or rendering an opinion regarding honesty," noting that it "need not resolve the abstract question of whether the MMPI-2 *could* detect deception so as to possibly constitute a 'lie detector test' in certain circumstances" but rather only whether the defendant's "use of the MMPI-2 rendered it a lie detector test." *Id.* at *12 (emphasis in original). The Court then turned to evidence that the defendant had used plaintiff's MMPI-2 scores to determine his "psychological suitability" for the job, rather than to detect deception. *Id.* at *12–13. Thus, the court concluded that the defendant did not violate section 19B by administering the test. *Id.* at *14.

Plaintiff points out that *Auguste* was decided at summary judgment and argues that his case, too, "merit[s] considerable discovery." Opp. at 4 n.1. However, the availability of summary judgment to test the sufficiency of evidence does not obviate a plaintiff's duty to plead his claims sufficiently in the first instance.

matters only insofar as it makes plausible that JPMorgan used the HireVue Interview for that *purpose*.

Plaintiff's allegations demonstrate the multi-utility of a HireVue Interview, making JPMorgan's mere alleged use inadequate to demonstrate its purpose. HireVue generates scores from its interviews based on "precise criteria [that] are often developed in consultation with the employer," "tailored to meet employers' highly individualized needs." *Id.* ¶ 33. Thus, a HireVue Interview might plausibly be employed for a wide variety of lawful (or unlawful) purposes, and nothing in the allegations suggests that lie detection is chief among its use cases, such to make any given user's purpose readily apparent. *See, e.g.*, *id.* ¶ 35 (quoting a HireVue patent that includes "reliability, honesty, and integrity" on a non-exhaustive list of 23 "potential competencies" that the platform can analyze (emphasis removed)). JPMorgan's use of HireVue Interviews is therefore "merely 'consistent with' unlawful action and is 'just as much in line with' lawful action." *See Frith v. Whole Foods Mkt., Inc.*, 38 F.4th 263, 270 (1st Cir. 2022) (quoting *Ocasio-Hernandez v. Fortuno-Burset*, 640 F.3d 1, 9 (1st Cir. 2011)). Plaintiff offers no other allegations that would permit the inference that JPMorgan has used or uses HireVue Interviews, either generally or as to Plaintiff's application, for the unlawful purpose.[4]

Accordingly, the Court finds Plaintiff's lie detector allegations "wholly conclusory" and so will dismiss the Lie Detector Claim.[5] *See id.*

---

[4] Plaintiff does not argue, and the Court does not find, that JPMorgan's requiring applicants to certify the truthfulness of their applications converts the HireVue Interview into a lie detector test or else meaningfully suggests that JPMorgan's use of HireVue Interviews is for that improper purpose. *See* Opp. at 7–10; Compl. ¶ 21; note 1, *infra*. Reading the Lie Detector Statute to prohibit employers from asking applicants not to lie on their applications would produce "absurd results." *See Commonwealth v. Morgan*, 476 Mass. 768, 778 (2017) (advising courts to interpret statutes "in a commonsense way").

[5] Likewise, the Court will dismiss that part of Plaintiff's claim for declaratory and injunctive relief based on the Lie Detector Claim allegations. *See* Compl. ¶¶ 44–47.

6

B. **The Notice Claim**

As to Plaintiff's Notice Claim, the parties focus almost exclusively on issues of statutory interpretation—namely, whether the Lie Detector Statute creates a private cause of action for enforcement of its notice requirement and whether, if so, Plaintiff qualifies as a "person aggrieved" under that statute for purposes of bringing such a claim.[6] *See* Memo. at 15–25; Opp. at 10–26; Reply at 9–16.

But before reaching these merits issues, the Court "must satisfy itself as to its jurisdiction, including [Plaintiff's] Article III standing to sue . . . regardless of whether the litigants have raised the issue of standing." *See Pagan v. Calderon*, 448 F.3d 16, 26 (1st Cir. 2006). "The standing inquiry is . . . claim-specific," meaning that the Court must determine whether Plaintiff "is entitled to have a federal court adjudicate each particular claim that he asserts." *See id.*

Without a viable allegation of having been subjected to a lie detector test, Plaintiff lacks Article III standing for his Notice Claim, and so the Court lacks jurisdiction to consider it. Plaintiff's only purported injury is that he was not apprised of his rights under section 19B. *See* Compl. ¶¶ 8, 18.[7] Since this purely informational injury resulted in no "downstream consequences"—*i.e.*, Plaintiff did not, as a result, take a lie detector test contrary to his rights—it

---

[6] Compare *Auguste v. G4S Secure Sols. (USA), Inc.*, No. SUCV14-3311-BLS1, at *13–15 (Mass. Sup. Ct. Apr. 25, 2016) (slip op.) (attached to JPMorgan's Memo. at Dkt. 22-1) (concluding that there was no private cause of action to enforce the notice requirement and that the plaintiff, who had not shown that he was subject to a lie detector test, was not a "person aggrieved" under the statute), *with Baker*, 717 F. Supp. 3d at 192–93 (concluding that there was a private cause of action to enforce the notice requirement).

[7] Plaintiff also states that, "[h]ad [he] been made aware by Defendant that the HireVue Interview was a lie detector test, he would not have completed the HireVue Interview." Compl. ¶ 8. But the statutory notice does not include the definition of a lie detector test. *See* Mass. Gen. Laws ch. 149, § 19B(2)(b). As such, it is not obvious why notice would have helped Plaintiff evaluate whether the HireVue Interview was being used as a lie detector test.

7

cannot provide a basis for standing.[8]  *See TransUnion LLC v. Ramirez*, 594 U.S. 413, 442 (2021) ("An 'asserted informational injury that causes no adverse effects cannot satisfy Article III.'" (quoting *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 1004 (11th Cir. 2020))).

Because the Court finds a lack of Article III standing, a jurisdictional defect, "the proper course is remand."  *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Me. Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989) (quoting *Langford v. Gates*, 610 F. Supp. 120, 122–23 (C.D. Cal. 1985)).[9]  Accordingly, pursuant to 28 U.S.C. § 1447(c), the Court will remand the Notice Claim.[10]

## IV.  Conclusion

For the foregoing reasons, JPMorgan's motion to dismiss is GRANTED in part and DENIED in part.  This action is hereby remanded to the Suffolk County Superior Court.

**So Ordered.**

|  |  |
|---|---|
| Dated:  October 22, 2025 | /s/ Brian E. Murphy<br>Brian E. Murphy<br>Judge, United States District Court |

---

[8] In *Baker*, the court concluded that the plaintiff had stated a "concrete informational injury" because, "as a downstream consequence of not receiving notice, he participated in a HireVue Interview."  717 F. Supp. at 192.  However, in *Baker*, the defendants did not challenge the sufficiency of the plaintiff's lie detector allegations.  *Id.* at 190.  Thus, the court could take for granted that the HireVue Interview was a lie detector test and thus that its imposition was an injury "of the kind the statute was designed to protect."  *Id.* at 192.  By contrast, in this case, JPMorgan has successfully shown that inference to be unreasonable.  Thus, Plaintiff's position is akin to the hypothetical case, distinguished by the *Baker* court, of an "[a]pplicant[] who never took" any lie detector test, whom the *Baker* court recognized "may well be in a different boat on the standing question."  *Id.* at 192 n.2.

[9] As Plaintiff points out, Massachusetts courts, like state courts in general, are not subject to Article III limitations.  *See, e.g.*, *Kenn v. Eascare, LLC*, 103 Mass. App. Ct. 643, 649 (2024) (holding that an injury deemed insufficiently concrete under Article III was nonetheless adequate for the claim to proceed in state court under Massachusetts standing principles).

[10] Likewise, the Court will remand that part of Plaintiff's claim for declaratory and injunctive relief based on the Notice Claim allegations.  *See* Compl. ¶¶ 44–47.